IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRELL G., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> FRANK BISIGNANO, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 1:23-cv-1158 <br><br> Magistrate Judge Jeannice W. Appenteng |

## MEMORANDUM OPINION AND ORDER

Plaintiff Derrell G. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed and the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB benefits on October 27, 2020 alleging disability since July 26, 2019 due to degenerative joint disease of the right hip. Administrative Record ("R.") 203-04, 231. Born in February 1977, plaintiff was 42 years old as of the alleged onset date, making him a younger person (under age 50).

20 C.F.R. § 404.1563(c); R. 203. He obtained a GED and spent many years working as a licensed forklift operator. R. 40-41, 232. In April 2017, plaintiff suffered a workplace injury while moving boxes off a lift, resulting in back and right hip pain. R. 41-42, 359. He ultimately stopped working due to his conditions and has not engaged in substantial gainful activity since the July 2019 alleged disability onset date. R. 40.

The Social Security Administration denied plaintiff's application initially on April 24, 2021, and upon reconsideration on November 4, 2021. R. 82-115. Plaintiff filed a timely request for a hearing and on March 7, 2022, he appeared before an administrative law judge ("ALJ"). R. 33. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Dennis Gustafson (the "VE").[1] R. 35-64. On May 27, 2022, the ALJ found that plaintiff's degenerative joint disease of the right hip, degenerative disc disease of the lumbar spine, substance abuse, and depression are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18-19.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform a reduced range of sedentary work. R. 20-24. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past relevant work, but could perform a significant number of other jobs available in the national economy. R. 24-26. As a result, the ALJ concluded that

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

2

plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 26. The Appeals Council denied plaintiff's request for review on December 21, 2022. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ made a flawed RFC determination, erred in discrediting his subjective statements regarding his symptoms, and wrongly concluded that there are a significant number of jobs that he can perform.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.     Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

4

B.  Analysis

   1.   RFC Determination

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in assessing his RFC. Dkt. 13 at 4-9; Dkt. 19 at 2-8. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that plaintiff is capable of sedentary work, R.20, which "requires sitting for 6 hours and standing and/or walking for 2 hours during an 8-hour workday." *Cari B. v. Bisignano*, No. 24 C 9056, 2025 WL 1666731, at *3 (N.D. Ill. June 12, 2025) (quoting *Collins v. Astrue*, 324 F. Appx. 516, 517 (7th Cir. 2009)). Plaintiff can only occasionally operate foot controls with his right foot, climb ramps or stairs, balance, kneel, stoop, crouch, and crawl. R. 20. He can never climb ladders, ropes or scaffolds, never work at unprotected heights or with moving mechanical parts, and can tolerate only occasional exposure to vibration. *Id*. Finally, plaintiff is limited to simple, routine tasks and requires a crutch for walking. *Id*.

      **a.**      **Mental RFC**

Plaintiff argues that the mental RFC is flawed because it does not adequately account for his functional limitations. On October 29, 2021, state agency reviewer Michele Womontree, Psy.D., concluded that plaintiff can "understand, remember and carry out short, simple instructions, to accomplish one or two-step tasks." R. 113. Plaintiff contends that the ALJ did not provide a valid reason for rejecting the step limitation. Dkt. 13 at 4-5; Dkt. 19 at 2. The Court disagrees.

Since plaintiff filed his claim in October 2020, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion. 20 C.F.R. § 404.1520c(a). *See also Robert J. L. v. O'Malley*, No. 20 C 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)).

6

"Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ acknowledged Dr. Womontree's restriction to one- and two-step tasks but explained that it was inconsistent with plaintiff's minimal treatment, R. 24, which consisted of two appointments with a nurse practitioner. R. 516, 531. The nurse's notes show that though plaintiff complained of depression and decreased concentration on September 19, 2020, R. 527, and seemed "somewhat indifferent" on October 30, 2020, R. 516, his mental status exams were normal. R. 516, 530. The nurse prescribed Wellbutrin and plaintiff reported feeling better on the medication. R. 516. Notably, plaintiff never received additional treatment for depression after October 30, 2020, and none was recommended. R. 516. *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at \*12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted physician's statement that was "inconsistent with other objective evidence in the record.").

Plaintiff objects that in reaching this conclusion, the ALJ failed to discuss the findings from an October 25, 2020 consultative psychiatric evaluation conducted by Henry K. Fine, M.D. Dkt. 13 at 6, 9; Dkt. 19 at 3-4. Not so. The ALJ acknowledged Dr. Fine's assessment that plaintiff showed deficits in immediate and remote memory, poor fund of information, problems calculating, problems abstracting, and judgment issues. R. 23, 785. But the ALJ also noted that according to Dr. Fine, "[t]he overall psychiatric picture does not impact [plaintiff's] functioning." *Id.* The

7

only other medical record plaintiff cites is a December 2021 emergency department treatment note indicating that he was exhibiting limited insight and judgment with a nonchalant affect. R. 952. As the ALJ observed, however, plaintiff was suffering from alcohol withdrawal at that time and did not require or receive further mental health treatment after that incident. R. 23, 960. Plaintiff fails to explain how this evidence demonstrates an inability to perform more than one- to two-step tasks.

Similarly unpersuasive is plaintiff's argument that the ALJ improperly equated his ability to drive with an ability to perform tasks involving three or more steps. Dkt. 13 at 7-8; Dkt. 19 at 6. Some courts have criticized ALJs for "merely citing a claimant's ability to drive or perform a similar task that has more than two steps as the basis for rejecting a one-to-two-step task limitation in the workplace in favor of a limitation to 'simple' work." *Joseph O. v. O'Malley*, No. 22-cv-2256, 2024 WL 756824, at *4 (N.D. Ill. Feb. 23, 2024). Here, Dr. Womontree expressly endorsed a restriction to simple tasks, R. 112, 113, and as explained, the ALJ reasonably determined that the fact that plaintiff presented with normal mental status exams despite receiving no mental health treatment undermined the one- and two-step restriction. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("[W]e only overturn th[e] weighing [of medical opinions] if no reasonable mind could accept the ALJ's conclusion.").

Finally, there is no merit to plaintiff's assertion that the ALJ ignored "numerous" other moderate limitations as set forth in the "worksheet" portion of Dr. Womontree's opinion. Dkt. 13 at 8-9. Plaintiff does not identify the limitations in

8

question or explain how they warrant additional functional restrictions. *See Weaver v. Berryhill*, 746 F. Appx 574, 578-79 (7th Cir. 2018) ("It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). Moreover, the ALJ acknowledged plaintiff's moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace, R. 19, but also accepted that he can perform simple, routine tasks as set forth by Dr. Womontree. R. 111-12 (finding that plaintiff can: understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and make simple work-related decisions).

Viewing the record as a whole, the ALJ did not commit reversible error by discounting Dr. Womontree's opinion that plaintiff is incapable of multi-step tasks. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"). "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of his mental RFC is denied.

9

### b.    Physical RFC

Plaintiff argues that the case still requires reversal or remand because the ALJ erred in finding him capable of sitting for six hours in an eight-hour workday. Dkt. 13 at 10-12; Dkt. 19 at 8-9. Plaintiff stresses that he experienced low back and right hip pain following his workplace injury and cites records from 2018 where he described the pain as aching, burning, shooting, and throbbing. Dkt. 13 at 11; Dkt. 19 at 8 (citing R. 340, 342, 344, 345, 347, 385). He also points to records from June 2019 and March, October, and November 2020 which document pain and tenderness that was aggravated in part by sitting. Dkt. 13 at 11; Dkt. 19 at 8-9 (citing R. 448, 469, 471, 487, 498). Even after an April 7, 2021 arthroscopic acetabuloplasty and labral reconstruction of the right hip, R. 541, plaintiff was still experiencing pain and tenderness in May and August 2021. Dkt. 13 at 11; Dkt. 19 at 9 (citing R. 674, 677, 764, 767). Plaintiff argues that this evidence demonstrates that he cannot meet the sitting demands of sedentary work.

The flaw in plaintiff's argument is that his own treaters repeatedly released him to sedentary work in May, June and August 2021. R. 680, 735, 770. Moreover, no physician of record found plaintiff more physically limited than the ALJ. On April 23, 2021, state agency reviewer Carolyn Hildreth, M.D., opined that plaintiff is capable of light work involving sitting, standing, and walking for six hours in an eight-hour workday. R. 96. Victoria J. Dow, M.D., affirmed that conclusion on November 3, 2021. R. 108. The ALJ found these opinions somewhat persuasive but imposed the additional limitation to sedentary work based on plaintiff's testimony and his use of

a crutch to ambulate. R. 22, 24. Plaintiff does not point to any contrary opinion, much less one finding him more restricted. As the Seventh Circuit has stated, "[t]he lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

In the absence of medical support for his claim, plaintiff cites to his subjective testimony and complaints as evidence that he has greater physical limitations. For example, he testified that he cannot sit for more than 20 to 30 minutes before needing to stand up, his body will "lock up" if he sits too long, and even after moving around the pain returns upon sitting. Dkt. 13 at 10; Dkt. 19 at 8 (citing R. 48, 52). In addition, plaintiff described being unable to sit for extended periods in his February 8, 2021 Function Report. R. 251, 252, 255. But during an October 2, 2021 internal medicine consultative examination, plaintiff told ChukwuEmeka F. Ezike, M.D., that he "has no significant difficulties with sitting." R. 777. Plaintiff ignores this evidence. He also ignores that "[i]t was because of and not in spite of [plaintiff's] testimony that the ALJ limited h[im] to a more restrictive residual functional capacity finding than any physician on the record." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

Viewing the record as a whole, the ALJ's determination that plaintiff is capable of sedentary work involving sitting for about six hours in an eight-hour workday is supported by substantial evidence. *See Karr*, 989 F.3d at 511

11

(substantial evidence is "not a high threshold"). Plaintiff's request to remand the case for further consideration of this issue is denied.

### 2. Subjective Symptom Evaluation

Plaintiff next argues that the ALJ erred in assessing his subjective statements regarding his symptoms. Dkt. 13 at 12-14; Dkt. 19 at 9-10. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts*, 27 F.4th at 1278). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

12

The ALJ discussed plaintiff's testimony and provided several valid reasons for finding his statements not fully credible. As noted, despite plaintiff's complaints of debilitating mental symptoms, his mental status exams were largely normal and his symptoms were controlled with medication. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). Plaintiff's complaints of disabling physical symptoms are likewise inconsistent with the medical record. On October 2, 2021, Dr. Ezike observed that plaintiff had normal range of motion in his cervical spine, lumbar spine, shoulders, and left hip. R. 22, 778. Straight leg raise tests were negative bilaterally, plaintiff was able to get on and off the exam table without difficulty, and he was neurologically intact with normal reflexes, motor strength, and sensation. *Id*. And plaintiff's own physicians released him to sedentary work as of May 2021. R. 24, 680. *Gwendolyn B.*, 2021 WL 1812879, at *8; *Britt*, 889 F.3d at 426.

Given this medical record, the ALJ reasonably questioned plaintiff's statements that he needs help with personal care and is completely incapable of performing any household activities (cooking, cleaning, laundry, shopping) so they are handled by his disabled wife. R. 19, 22-23. Dkt. 13 at 12-13; Dkt. 19 at 9. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or

13

exaggerated."). Contrary to plaintiff's assertion, moreover, the ALJ did not equate the wife's ability to perform household tasks with an ability to work full-time. Dkt. 13 at 12-13; Dkt. 19 at 9. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). He simply observed that plaintiff's testimony about his disabled wife appeared inconsistent with her level of activity. R. 22-23.

One additional reason the ALJ gave for discounting plaintiff's testimony is less persuasive. The ALJ noted that after plaintiff's April 2021 hip surgery, he started physical therapy ("PT") but was discharged in May 2021 due to noncompliance with treatment. R. 21, 708. And though plaintiff's doctor referred him to a pain management specialist and instructed him to restart PT in June and August 2021, R. 735, 339, there is no evidence he pursued either treatment. R. 22. "[F]ailure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure." *Joshua L. v. Saul*, No. 20 CV 3213, 2021 WL 5179927, at *9 (N.D. Ill. Nov. 8, 2021). But an ALJ "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Here, the ALJ did not address plaintiff's testimony that PT made his hip pain worse and that he struggled to find medical specialists who would accept his insurance. R. 44, 47-48.

Regardless, an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir.

14

2013)). Indeed, "[n]ot all of the ALJ's reasons [for a credibility determination] must be valid as long as *enough* of them are . . ." *Halsell v. Astrue*, 357 F. Appx. 722-23 (7th Cir. 2009) (emphasis in original). And "even if reasonable minds could differ on the ALJ's rejection of [plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements was not patently wrong and his request to remand the case for further consideration of this issue is denied.

### 3. Number of Available Jobs

Plaintiff finally argues that the ALJ erred in finding him capable of performing a significant number of jobs available in the national economy. At step five of the analysis, the ALJ accepted the VE's testimony that a person with plaintiff's background and RFC can work as a document specialist (15,300 jobs nationally), an addresser (3,150 jobs nationally), and a tube operator (3,060 jobs nationally). R. 26. Plaintiff contends that the addresser and tube operator jobs are obsolete, and that the remaining 15,300 document specialist jobs are not significant. Dkt. 13 at 14-16; Dkt. 19 at 10-12.

This Court has its doubts that the addresser and tube operator jobs remain viable positions. *See, e.g., Thomas D. v. Kijakazi*, No. 20 C 2683, 2023 WL 2561614, at *8 n.14 (N.D. Ill. Mar. 17, 2023) (characterizing the job of "tube operator" as "a relic of the past"); *Tasha C. v. Kijakazi*, No. 22 C 816, 2023 WL 3688167, at *2 n.3 (N.D. Ill. May 26, 2023) (expressing concern that the addresser position is obsolete).

15

Nonetheless, remand is not required because the error was harmless. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi,* 4 F.4th 498, 504 (7th Cir. 2021)) ("'[T]he harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'").

First, plaintiff concedes that the document specialist job is "non-obsolete." Dkt. 13 at 15; Dkt. 19 at 11-12. In addition, the ALJ did not abuse his discretion in determining that 15,300 national jobs qualifies as a significant number for purposes of the step five analysis. "[T]he Seventh Circuit has not provided 'a clear baseline' for what qualifies as 'significant.'" *Nilda G. v. O'Malley*, No. 22 C 1542, 2024 WL 4647855, at *4 (N.D. Ill. Oct. 31, 2024) (quoting *Milhem v. Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022)). The only "guideposts" are that: work existing in "very limited numbers" cannot meet the requirement; 140,000 national jobs is "well above the threshold for significance"; and 89,000 national jobs is "in accord with the numbers of national jobs held to be significant by other circuits." *Milhem*, 52 F.4th at 695-97 (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 national jobs); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 national jobs); *Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (32,000 national jobs)).

In this Court's view, 15,300 national jobs is "in accord" with the range of job numbers identified in *Milhem* (10,000 to 32,000), and consistent with numbers that have been accepted by other district courts in this circuit. *See, e.g., Nilda G.*, 2024

16

WL 4647855, at *4 (17,000 national jobs significant); *Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 national jobs significant); *Smith v. Kijakazi*, No. 22 C 163, 2023 WL 4579444, at *8 (W.D. Wis. July 18, 2023) (17,000 national jobs significant). *But see John C. v. Saul*, No. 19 C 411, 2021 WL 794780, at *6 (C.D. Ill. Mar. 2, 2021) (20,000 national jobs not significant); *Gass v. Kijakazi*, 1:19-CV-404-TLS, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021) (24,000 national jobs not significant). Since the ALJ reasonably accepted reliable VE testimony in concluding that 15,300 national jobs is a significant number, plaintiff's motion to remand the case for further consideration of the step five determination is denied.

## CONCLUSION

For the reasons stated above, plaintiff's request to remand the case is denied, and the Commissioner's motion for summary judgment [17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 7/23/2025